UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DION LATWON WINGATE, SR.,

     Plaintiff,

v.                                Case No. 3:19cv1618-LC-HTC

DEPUTY RICHARDS and
DEPUTY JENNINGS,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Dion Latwon Wingate, Sr., a prisoner proceeding *pro se* and *in forma pauperis*, brings this civil rights action under 42 U.S.C. § 1983, alleging Defendants Okaloosa County Sheriff's Office Deputies Richards and Jennings violated his Fourth Amendment right against unlawful search and seizure by illegally detaining him and searching his girlfriend's vehicle. ECF Doc. 11. On December 30, 2019, Defendants filed a motion for summary judgment. ECF Doc. 17. The motion has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C).

Upon careful review and consideration of the parties' written submissions, the record, and the relevant law, the undersigned respectfully recommends that Defendants' motion be GRANTED.

## I.    BACKGROUND

Plaintiff is an inmate of the Florida Department of Corrections ("FDOC") currently confined at Okaloosa Correctional Institution.    The allegations in Plaintiff's amended complaint relate to Plaintiff's 2018 arrest, and the amended complaint names two (2) arresting officers, Deputies Richards and Jennings, as defendants.  ECF Doc. 11 at 1, 2.  The following facts are derived from the amended complaint,[1] motion for summary judgment with attached exhibits, and Plaintiff's response, and are undisputed by the parties except where noted.

On February 7, 2018, Plaintiff was a passenger in a vehicle driven by his girlfriend, Theresa Hobbs, when the vehicle was pulled over by Defendants for an investigatory stop.  Although the parties disagree as to what time the stop occurred, that dispute is irrelevant for purposes of this report and recommendation. Defendants stopped the vehicle because they initially believed Plaintiff was his son, Dion Wingate, Jr., for whom Defendants had an active arrest warrant.  However, as Defendants approached the vehicle, they realized the passenger was not Plaintiff's son.

After explaining the reason for the stop, Defendant Jennings apologized for the mistake and stated that the stop was over, that "right now we are just having a

---

[1] *See Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986) (holding specific facts pled in a sworn complaint must be considered in opposition to a motion for summary judgment).

conversation," and that the lights on the patrol vehicle were merely on "for traffic reasons and everyone's safety."  ECF Docs. 17 at 3, 27 at 3.  At that point, Defendant Richards returned to his patrol vehicle and radioed in the call, stating, "FYI this is going to be Wingate, Sr., they have been released, told free to leave, right now we are going at them as a citizen contact, to see if they will stay and talk to us."[2]  ECF Docs. 17 at 4, 27 at 3.

While still standing at the driver's side, Defendant Jennings asked Hobbs and Plaintiff if they had any questions about the stop.  They told him they did not, that they were familiar with the situation, and that this had happened to Plaintiff before.  Jennings then said, "[S]o, since we got out with you and talked with you, you don't have to, do you mind if I get your information, just saying I talked to you?  Do you a driver's license or anything on you?"  Hobbs asked if she had to provide any information, and Defendant Jennings replied, "No ma'am, I am just asking."  ECF Doc. 17 at 4.  Hobbs declined.  Jennings then asked if Hobbs had a valid driver's license, to which she said she did, but she did not have it on her.  Jennings then asked Hobbs for her name, which she provided.

---

[2] Plaintiff admits that this statement was made to the dispatcher over the radio, but he disputes that either he or Hobbs were explicitly told they were free to leave.  ECF Doc. 27 at 3.  Based on provided video footage, Defendants do not explicitly tell Hobbs or Plaintiff that they can leave after telling them the stop is over.  However, after they were handcuffed, and in response to Hobbs' comments about being harassed, Jennings reminds Hobbs that she was initially free to leave and. although she does not dispute this, she tells him she did not feel that she could just drive off while he was talking to her and that he asked her to wait.

Jennings then asked Plaintiff if he had any identification on him, to which Plaintiff said he did. Jennings then asked if Plaintiff minded if Jennings could see it and Plaintiff handed Jennings his driver's license. Defendant Jennings ran Plaintiff's driver's license and learned it was suspended. Jennings then asked Plaintiff if he minded getting out of the vehicle so they could talk about the license.

Plaintiff subsequently exited the vehicle. The parties disagree as to whether Plaintiff did so voluntarily or was ordered to do so. As discussed further herein, this dispute is at the crux of Plaintiff's claim that he was unlawfully seized. After Plaintiff exited the vehicle, Defendant Richards stated that he observed marijuana shake fall from Plaintiff's lap or shirt onto the passenger seat. Based on that observation, Defendants searched the vehicle and found narcotics, including heroin, cocaine, and marijuana. Defendants arrested Plaintiff on a number of drug charges. *See* ECF Doc. 18, Exhibit E at 3.

## II.    SUMMARY JUDGMENT STANDARD

To prevail on their motion for summary judgment, Defendants must show that Plaintiff has no evidence to support his case or present affirmative evidence that Plaintiff will be unable to prove his case at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If Defendants successfully negate an essential element of Plaintiff's case, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* The "mere existence of

some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 248 (1986). An issue of fact is material if it is a legal element of the claim, under the applicable substantive law, which might affect the outcome of the case. *See id.*; *accord Tipton v. Bergrohr GMBH–Siegen*, 965 F.2d 994, 998 (11th Cir. 1992).

Additionally, the Court must view all the evidence, and all factual inferences reasonably drawn from the evidence, "in the light most favorable to the non-moving party." *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1534 (11th Cir. 1992), citing *Mercantile Bank & Trust Co. v. Fidelity and Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985).

## III. DISCUSSION

Defendants have moved for summary judgment based on qualified immunity.[3] In support of their motion, Defendants rely on body camera footage of the arrest and

---

[3] Although Defendants also argue that they are entitled to summary judgment in their official capacities, in Plaintiff's response, he clarifies that he is suing Defendants in their individual capacities only. ECF Doc. 27 at 1, 13.

arrest records.  ECF Doc. 18, Exhibits A-H.  For the reasons discussed below, the

undersigned finds that Defendants are entitled to qualified immunity as a matter of

law and, thus, are also entitled to summary judgment.[4]

Qualified immunity shields government officials performing discretionary

functions from liability for civil damages in their individual capacities.  *Harlow v.*

*Fitzgerald*, 457 U.S. 800 (1982); *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d

1288, 1291 (11th Cir. 2009).  It offers "complete protection for government officials

sued in their individual capacities as long as 'their conduct violates no clearly

established statutory or constitutional rights of which a reasonable person would

have known.'"  *Whitner v. Moore*, 160 F. App'x 918, 919 (11th Cir. 2005), quoting

*Lee v. Ferraro*, 284 F.3d 1188, 1193-94 (11th Cir. 2002).   "The purpose of this

immunity is to allow government officials to carry out their discretionary duties

without the fear of personal liability or harassing litigation … protecting from suit

all but the plainly incompetent or one who is knowingly violating the federal law."

*Id.*  (citations and quotations omitted).

To be shielded from suit by qualified immunity, a public official must first

show that he was acting within the scope of his discretionary authority.  *Whitner*,

---

[4] Defendants also move for dismissal of this action for Plaintiff's failure to disclose two (2) prior petitions for writs of habeas corpus and one (1) appeal he previously filed.  ECF Doc. 17 at 22. Although Plaintiff's failure to disclose is a ground for dismissal, the undersigned need not address that issue here, as a finding of qualified immunity is dispositive of this matter.

160 F. App'x at 919, citing *Vinyard v. Wilson,* 311 F.3d 1340, 1346 (11th Cir. 2002). It is undisputed that, during the events in question, Defendants were on duty, in full uniform, and participating in (1) the location of an individual for whom they had an active arrest warrant and (2) the investigation and prevention of criminal activity in their capacities as law enforcement officers.  Indeed, Plaintiff admits that "at all times material, [Defendants] … were acting within the course and scope of their employment."  ECF Doc. 27 at 2.  Thus, as an initial matter, the undersigned finds that Defendants were acting within the scope of their discretionary authority.  *See Vinyard,* 311 F.3d at 1346 (holding it was "clear" that a law enforcement officer "was acting within the course and scope of his discretionary authority" when making an arrest).

Having found that Defendants were acting within the scope of their discretionary duties during Plaintiff's arrest and the events leading up thereto, the burden shifts to Plaintiff to show (1) facts demonstrating that a constitutional violation occurred and (2) that the constitutional right was clearly established at the time of the alleged violation.  *See Whittier v. Kobayashi*, 581 F.3d 1304, 1308 (11th Cir. 2009).  However, "[i]f the conduct did not violate a constitutional right, the inquiry ends there."  *Robinson v. Arrugueta*, 415 F.3d 1252, 1255 (11th Cir. 2005). The undersigned considered the facts alleged in Plaintiff's amended complaint, the

facts alleged in Plaintiff's response to the motion for summary judgment, and the body camera footage of the arrest to determine whether Plaintiff met his burden.

### A.    The Initial Investigatory Stop Did Not Violate The Fourth Amendment.

The Fourth Amendment prohibits unreasonable searches and seizures, and its proper invocation depends on the nature of the search or seizure as well as the factual circumstances surrounding it.  *See U.S. v. Gordon*, 231 F.3d 750, 754 (11th Cir. 2000).  Under *Terry v. Ohio*, 392 U.S. 1 (1968), an investigatory stop of a vehicle passes constitutional muster if it is based on a reasonable suspicion of unlawful activity.  *Id.*  "[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot."  *Illinois v. Wardlow*, 528 U.S. 119 (2000), citing *Terry*, 392 U.S. at 30.

Although there are no rigid limitations as to the permissible duration or scope of a *Terry* stop, because of the noncustodial nature of the investigation, it is designed to be as brief and nonintrusive as possible.  *See U.S. v. Sharpe*, 470 U.S. 675, 685 (1985); *U.S. v. Hardy*, 855 F.2d 753, 759 (11th Cir. 1988).  Thus, the detention must last no longer than is necessary to effectuate the purpose of the stop.  *Sharpe*, 470 U.S. at 685; *Florida v. Royer*, 460 U.S. 491, 500 (1983).  "Several issues and circumstances are deemed relevant to the analysis, including the law enforcement purposes served by the detention, the diligence with which the police pursue the

investigation, the scope and intrusiveness of the detention, and the duration of the detention." *Hardy*, 855 F.2d at 759, citing *Sharpe*, 470 U.S. at 685–86. The objective is to verify or dispel the officer's suspicion in as short a time as necessary. *See Sharpe*, 470 U.S. at 686; *Royer*, 460 U.S. at 500.

Plaintiff does not dispute that Defendants stopped his vehicle because they believed it was his son traveling in the vehicle. ECF Doc. 27 at 2. Hobbs told officers that Plaintiff and his son are "identical." Plaintiff also admits that he "somewhat resembles" his son. ECF Docs. 11 at 5, 27 at 2. Plaintiff also does not dispute that Defendants had an active warrant for his son's arrest.

Clearly, Defendants had a reasonable, articulable suspicion that an individual for whom they had an active arrest warrant was in the vehicle and thus were entitled to conduct a brief, investigatory stop for purposes of executing that arrest warrant. *See U.S. v. Helton*, 232 F. App'x 747, 749 (10th Cir. 2007) (holding traffic stop was a reasonable investigative stop for purposes of executing an arrest warrant, although passenger in car turned out not to be subject of warrant), citing *Hill v. California*, 401 U.S. 797, 804 (1971). Indeed, Hobbs told Jennings that Plaintiff has been stopped before because of his resemblance to his son.

Additionally, the stop was brief. As soon as Defendants realized Plaintiff was not his son and that his son was not in the vehicle, Jennings told Hobbs and Plaintiff the stop was over. Less than two (2) minutes elapsed between Defendants pulling

over Ms. Hobbs' vehicle and Jennings telling Plaintiff and Hobbs that the stop was over. *See* ECF Doc. 18, Exhibit B at 2:10. Moreover, approximately seven (7) minutes passed between the stop of the vehicle and Jennings handcuffing Plaintiff. *See* ECF Doc. 18, Exhibit B at 7:40. Thus, even assuming, *arguendo*, that Plaintiff was detained until he was handcuffed, the encounter was, at most, seven (7) minutes long.

Although Jennings did not specifically tell Hobbs and Plaintiff they could leave and continued to talk to them, Hobbs and Plaintiff also continued to engage Jennings. When Jennings asked Hobbs and Plaintiff if they had any questions about the stop, Plaintiff asked what the warrant was for, said he was "familiar" with it, and tells Jennings that he was on the phone with the Sheriff's office and the Navy last week trying to get things straightened out. Also, although Defendant asked Plaintiff and Hobbs to wait while he ran Plaintiff's license, Jennings made clear to Plaintiff and Hobbs that they did not have to give him their license or any identification. Given the lack of any factual dispute as to why the vehicle was stopped, the undersigned finds that the initial investigatory stop passes constitutional muster under *Terry*.

**B.    Plaintiff's Encounter With Defendants Was Not A Seizure Under The Fourth Amendment.**

As stated above, after the stop was completed, Defendants continued to engage the Plaintiff and Hobbs in conversation. This subsequent encounter led to

Plaintiff exiting the vehicle after Defendants learned Plaintiff was in possession of a suspended license and the Defendants discovering illegal narcotics. Plaintiff alleges he was ordered out of the vehicle immediately after being told his license was suspended. Defendants, on the other hand, contend that they *asked* him to exit the vehicle and, also, simultaneously informed him that he did not have to exit the vehicle if he did not wish to do so. If Plaintiff exited the vehicle voluntarily, there cannot be any Fourth Amendment violation because there was no seizure. To make this determination, the Court asks whether a reasonable person would have felt free to terminate the encounter. *See Roberts v. Spielman*, 643 F.3d 899, 905 (11th Cir. 2011).

For Fourth Amendment purposes, a seizure occurs when an officer, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Roberts*, 643 F.3d at 905, quoting *Terry*, 392 U.S. at 19 n. 16. Whether the plaintiff himself felt as though his liberty was restrained is of no import; rather, the test is objective, and an encounter between a police officer and a citizen becomes a seizure only when, under the totality of the circumstances, "a reasonable person would not feel free to terminate the encounter." *Roberts*, 643 F.3d at 905, quoting *U.S. v. Jordan*, 635 F.3d 1181, 1186 (11th Cir. 2011). In considering whether a police-citizen encounter was consensual or whether a seizure has occurred, the Court should consider the following factors:

> [W]hether a citizen's path is blocked or impeded; whether identification
> is retained; the suspect's age, education and intelligence; the length of
> the suspect's detention and questioning; the number of police officers
> present; the display of weapons; any physical touching of the suspect,
> and the language and tone of voice of the police.

*Jordan*, 635 F.3d 1181, 1186 (11th Cir. 2011), citing *U.S. v. Perez*, 443 F.3d 772, 777-78 (11th Cir. 2006).

Although factual disputes should not be resolved at the summary judgment stage, a court also cannot blindly accept a plaintiff's allegations if those allegations are blatantly contradicted by video evidence. *See Jones v. City of Cincinnati*, 736 F.3d 688, 692 (6th Cir. 2012) (finding that, where video evidence "blatantly contradict[s]" a plaintiff's version of events, the Court must "view[] the facts in the light depicted by the videotape" and cannot adopt the version of the facts offered by the plaintiff), citing *Scott v. Harris,* 550 U.S. 372, 380 (2007) ("[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment").

Based upon the body camera footage of the incident, no reasonable juror would find that Defendants "seized" Plaintiff when they asked him to exit the vehicle.[5] After running the license and learning the license had been suspended,

---

[5] Almost immediately after Plaintiff gets out of the vehicle, Richards observes marijuana on the passenger's seat and, at that point, orders Hobbs out of the vehicle and places her in handcuffs. As

Defendant Jennings asked Plaintiff if he knew it was suspended, and he said he did. Defendant Jennings asked Plaintiff if he knew it was illegal to keep a suspended license, and Plaintiff said he did not. Defendant Jennings then asked Plaintiff, "Mr. Wingate, you don't have to, but do you mind just stepping out and talking to me real quick?" ECF Doc. 18, Exhibits A, B. Plaintiff then proceeded to get out of the vehicle.

This version of events blatantly contradicts Plaintiff's allegation in his amended complaint that he was told "[his] license was suspended and that [he] was being placed under arrest for it" (ECF Doc. 11 at 5-6) as well as the allegations in his response that he was "immediately ordered out of the vehicle, handcuffed, and placed under arrest" and never asked "do you mind just stepping out and talking to me real quick?" ECF Doc. 27 at 4. To the contrary, as Plaintiff exited the vehicle, Defendant Jennings told Plaintiff, "You're not under arrest by any means." ECF Doc. 18, Exhibit B at 7:00.

Considering the factors set forth in *United States v. Jordan*, under a totality of the circumstances and based on the body camera footage, a reasonable person would have felt free to terminate the encounter between Plaintiff and Defendants. First, at no point during the encounter did Defendants – or anyone – block or impede Hobbs'

---

soon as Hobbs is ordered out of the vehicle, Jennings places Plaintiff in handcuffs. At that point, it is clear that Plaintiff has been "seized."

or Plaintiff's path to leave prior to placing them in custody.  Second, although

Defendant Jennings *asked* for identification, he did not *order* its production, and he

twice stated that Plaintiff and Hobbs were not required to produce identification.

ECF Doc. 18, Exhibit B at 2:41 (initially stating, "You don't have to" and, when

again questioned whether identification was required, stating "No … I'm just

asking").  Indeed, Hobbs <u>did not</u> provide her identification to Defendants.

Third, Plaintiff's criminal records, which date back to 1989, suggest that

Plaintiff was well-versed in police officer encounters prior to the encounter at issue.

ECF Doc. 18, Exhibit H at 31.  Fourth, upon realizing Plaintiff was not his son,

Officer Jennings stated, "[T]his stop is over" and informed them that the flashing

lights were merely on "for everyone's safety, for traffic reasons."  ECF Doc. 18,

Exhibit B at 2:10.  And finally, at all times prior to the identification of possible

narcotics in the vehicle, Defendants spoke to Plaintiff in a conversational, rather than

authoritative, tone.

Although no single factor is generally dispositive in determining whether an

encounter is consensual or constitutes a Fourth Amendment seizure, courts have

consistently found a combination of similar circumstances to constitute a consensual

encounter.  *See U.S. v. Allen*, 447 F. App'x 118, 121 (11th Cir. 2011) ("[Plaintiff's]

initial encounter with the police officers did not rise to the level of a seizure

implicating the Fourth Amendment . . . . [T]he two officers did not block or impede

[Plaintiff's] path, demand identification, brandish their weapons, [or] physically touch him."); *U.S. v. Barry*, 394 F.3d 1070, 1075 (8th Cir. 2005) (finding encounter consensual where, after an officer parked his marked cruiser, he approached and knocked several times on the window of the defendant's parked vehicle in order to speak with the occupant, but did not display a weapon, did not block the vehicle, and did not issue commands); *U.S. v. Ringold*, 335 F.3d 1168, 1172-73 (10th Cir. 2003) (finding encounter consensual where, after two uniformed officers exited their patrol vehicle which was not blocking individual's vehicle, they approached individual standing outside of his parked vehicle and asked him questions in a polite and friendly tone about potential criminal activity, without displaying weapons or touching the defendant).

Although Plaintiff alleges in his response that at least six (6) to eight (8) officers were present, several of which "had their gun drawn and were pointing them at Plaintiff," ECF Doc. 27 at 7, the video footage blatantly contradicts Plaintiff's allegation. Indeed, there is no indication that any of the present officers – of which the undersigned counts only three (3) near the vehicle prior to Plaintiff's arrest – drew their guns at any point. Thus, there was no "show of authority that communicate[d] to the individual that his liberty [was] restrained, meaning he [was] not free to leave." *U.S. v. Baker,* 290 F.3d 1276, 1278 (11th Cir. 2002). For all these

reasons, there was no seizure in violation of the Fourth Amendment prior to Plaintiff being handcuffed for suspicion of possession of narcotics.

### C.    Defendants' Search Of Ms. Hobbs' Car And Subsequent Arrest Of Plaintiff Did Not Violate The Fourth Amendment.

The police may search a vehicle for contraband without violating the Fourth Amendment if the vehicle "is readily mobile and probable cause exists to believe it contains contraband." *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996).  Once Defendant Jennings asked Plaintiff to exit the vehicle, and after Plaintiff did so, Defendant Richards saw what he believed to be marijuana, in plain view, in the passenger seat.  ECF Doc. 18, Exhibit A at 6:56.  Thus, Defendants' search of Hobbs' car was supported by probable cause and did not violate the Fourth Amendment.  *See U.S. v. Gardner*, 2010 WL 11519311 (M.D. Fla. Apr. 14, 2010) (holding search of vehicle was supported by probable cause where officer saw marijuana in plain view) (citing *U.S. v. Faulkner*, 547 F.2d 870, 871 (5th Cir. 1977) (holding "[d]iscovery of marijuana seeds in plain view furnished sufficient probable cause to conduct a search of the vehicle")).

Finally, upon finding narcotics in the vehicle, Defendants established probable cause to place Plaintiff under arrest for constructive possession of the narcotics.  Constructive possession exists if an individual has "ownership, dominion, or control over an object itself or dominion or control over the premises or the vehicle in which the object is concealed." *U.S. v. Leonard*, 138 F.3d 906, 909 (11th

Cir. 1998), citing *U.S. v. Derose*, 74 F.3d 1177, 1185 (11th Cir. 1996). Probable cause exists to arrest all passengers of a vehicle for constructive possession of contraband found therein where the contraband is accessible to all passengers and no information singles out one individual as the possessor. *See Maryland v. Pringle*, 540 U.S. 366, 373 (2003); *see also U.S. v. Delossantos*, 536 F.3d 155, 159 (2d Cir. 2008) ("the Supreme Court has ... said that it is reasonable to infer that if one person in a vehicle is engaged in drug dealing, so are the other passengers").

In this case, Defendant Richards observed what he believed to be marijuana shake fall from Plaintiff's shirt or lap onto the front passenger seat. ECF Doc. 11 at 6, 17 at 5. Although Plaintiff disputes Richards observed the marijuana, he does not dispute that Richards told Plaintiff he saw the marijuana. Moreover, the video footage shows Richards immediately go to the passenger side after Plaintiff exited the vehicle and subsequently gather possible marijuana residue from the passenger's seat. Richards' observation of the marijuana residue, which was in plain sight, provided officers with probable cause to search the vehicle.[6] *See Gardner*, 2010 WL 11519311 at *13, citing *Faulkner*, 547 F.2d at 871.

---

[6] Upon a subsequent search of the vehicle, Defendants found, among other things, a plastic baggy of marijuana residue in the passenger front door; a sock concealed inside of a coffee cup in a cup holder in the center console; and three (3) sugar packets in Plaintiff's pocket, one (1) of which had been opened, "a common amount of sugar used to sweeten coffee." ECF Doc. 18, Exhibit E at 3.

## IV.    CONCLUSION

Based on the uncontroverted evidence set forth in the body camera footage, the undersigned finds that Plaintiff failed to meet his burden of demonstrating that Defendants violated a constitutional right.    As such, Defendants are entitled to qualified immunity.

Accordingly, it is respectfully RECOMMENDED that:

1.    Defendants' motion for summary judgment (ECF Doc. 17) be GRANTED and judgment be entered in favor of Defendants.

2.    The clerk be directed to close the file.

Done at Pensacola, Florida this 7th day of May, 2020.

*s/ Hope Thai Cannon*

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  A copy of objections shall be served upon the Magistrate Judge and all other parties.    A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.